UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ANTONIO MERCADO, JR., | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 09-1146 |
| v. | : | MEMORANDUM OPINION & ORDER |
| JOHN E. POTTER, Postmaster General, U.S. Postal Service, | : | |
| Defendant. | : | |

This is an employment discrimination case brought by Plaintiff Antonio Mercado, Jr. against his former employer, the U.S. Postal Service, through Defendant John E. Potter, Postmaster General.  Plaintiff has alleged that he was terminated from his employment with the Postal Service in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, because he was discriminated against due to national origin (Hispanic/Puerto Rican) and gender (male).  Defendant has filed a motion for summary judgment on the Complaint, and oral argument on the motion was heard on March 1, 2011.  The record of that argument is incorporated here.  For the reasons discussed on the record, and those set forth here, the Defendant's motion for summary judgment will be granted.

<u>Background</u>

On or about July 8, 2006, Plaintiff was hired by the Postal Service as a part-time flexible (PTF) sales associate in the Atco, New Jersey Post Office.[1]  As an initial hire,

---

[1] Prior to his hiring at Atco, Plaintiff served as a "casual" employee at the Camden Post Office, where he alleges he worked 35 days without a break.  Plaintiff also stresses that he had entry keys to the building there, as well as access to the alarm system. Compl. ¶ 30.

Plaintiff was subject to a 90-day probationary period. At that time, the Atco Post Office was comprised of three full-time clerks, three PTF clerks, and one casual clerk. Whereas PTF clerks are intended to fill career positions, casual clerks are temporary employees. (Compl. ¶ 5-8.)

Plaintiff was the only Hispanic employee at the Atco Post Office, and he alleges that he developed a professional rapport among the Spanish speaking clientele. Nonetheless, Plaintiff contends that management favored a non-Hispanic, female casual employee, Ashley Hoak. For example, Plaintiff endured split shifts, where he would have a four to five hour break in his workday, and return to work the customer service window for approximately an hour and a half. He alleges that Ms. Hoak would continue to work during Plaintiff's extended break times. Additionally, Plaintiff alleges that when he was told to go on break, many times he was working the same mail handling machines as Ms. Hoak, and she was permitted to continue to work on the machines. Finally, Plaintiff asserts that Ms. Hoak received more assistance from management than he did. Plaintiff contends that his termination was motivated by the Postal Service management's efforts to show favoritism to Ms. Hoak in order to eventually place her into a PTF position. (Compl. ¶ 10-15.)

Since he was on a probationary period, Plaintiff's performance was scheduled to be reviewed after 30, 60, and 80 days. Plaintiff's supervisor was Joseph P. Manzo, so he was responsible for performing the performance evaluations. Since Manzo was a relatively new supervisor as of August 6, 2006,[2] George Donahue, Postmaster of the

---

[2] Declaration of Elizabeth Pascal ("Pascal Decl."), Ex. 2, Mercado Dep. 41:11-22; Ex. 4, Donahue Aff. at 2, ¶ 5; Ex. 3, Manzo Aff. at 5, ¶ 12.

2

Atco Post Office, assisted with Plaintiff's 30-day evaluation. At that time, Plaintiff received a satisfactory rating. (Compl. ¶ 16-19.)

On September 5, 2006, for his 60-day evaluation, Plaintiff received an unsatisfactory rating. Similarly, Plaintiff's 80-day evaluation on September 25, 2006 resulted in an unsatisfactory rating. As a result, Donahue advised Plaintiff via letter that Plaintiff was to be terminated, effective close of business September 26, 2006, due to unsatisfactory job performance during his probationary period. (Compl. ¶ 21-25.)

Plaintiff has asserted that "the 60-day and 80-day evaluations, because of their overall consistency of 'unacceptable,' appear to be discriminatory on their face." (Compl. ¶ 26.) Plaintiff contends that the factors that were considered in employee evaluations were: work quality, work quantity, dependability, work relations, work methods, and personal conduct. He alleges that he "never took leave, was always on time, always did work that was assigned to him, and never caused any problems." (Compl. ¶ 27.)

Accordingly, after his termination, Plaintiff filed an EEO complaint with the Postal Service. An administrative hearing was held before an administrative law judge, who made a finding of no discrimination on May 15, 2008. On May 20, 2008, the Postal Service accepted and fully implemented the ALJ's decision, and issued a final agency decision. The Postal Service's decision was affirmed by the EEOC on September 9, 2008, and Plaintiff's request for reconsideration was denied on December 8, 2008. Thus, Plaintiff was issued a right to file a lawsuit within 90 days of his receipt of the December 8, 2008 denial of reconsideration. Plaintiff filed suit in this matter on March 12, 2009, alleging that his termination on September 26, 2006 was discriminatory. (Compl. ¶ 31-36.)

Discussion

A. Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (a). The Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.;

Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322. That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

B. Employment Discrimination Analysis

The task of the Court is not to second-guess employment decisions, but is instead to determine whether the employment decisions were motivated by an illegal discriminatory purpose. Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 525-

5

27 (3d Cir. 1992). Analysis of Mallet's claims is governed by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, an employee must first establish by a preponderance of the evidence a prima facie claim of discrimination by showing (1) the plaintiff is a member of a protected class; (2) he or she was qualified for the position sought; (3) he or she was subject to an adverse employment action despite being qualified; and (4) the employer treated more favorably those not in the protected class or, under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to plaintiff's to fill the position. Sarullo v. United States Postal Service, 352 F.3d 789, 797 (3d Cir. 2003) (citations omitted). The prima facie test is a flexible one which must be tailored to fit the specific context in which it is applied. Id. at 797-98.

Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment decision. McDonnell Douglas, 411 U.S. at 802. The employer may satisfy this burden "by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)). However, "[a]n employer cannot successfully defend a hiring decision against a Title VII challenge merely by asserting that the responsible hiring official selected the man or woman who was 'the right person for the job.'" Iadimarco v. Runyon, 190 F.3d 151, 166 (3d Cir. 1999).

Once the employer meets this "relatively light burden," "the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that

6

the employer's explanation is pretextual." Fuentes, 32 F.3d at 763.  A plaintiff may establish pretext directly, by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly, by showing that the employer's proffered reason is unworthy of credence.  Ezold, 983 F.2d at 523.  One of these is sufficient; the employee does not have to prove both that the explanation is implausible and that discrimination was a motivating factor.  Waldron v. SL Indus., Inc., 56 F.3d 491, 494-95 (3d Cir. 1995).  On the other hand, the employee cannot carry his burden by showing that the employer's decision was "wrong or mistaken." Fuentes, 32 F.3d at 765.  Rather, he must demonstrate such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder *could* rationally find them unworthy of credence," id. (citing Ezold, 983 F.2d at 531), "and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons,'" id. (citing Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638 (3d Cir. 1993)).

     A plaintiff's subjective belief that his qualifications should have been accorded more weight is not probative of pretext.  See, e.g., Valdes v. Union City Bd. Of Ed., 186 Fed. Appx. 319, 323 (3d Cir. 2006).  An employer is entitled to evaluate which qualifications best fit its needs in selecting a candidate. See Sarmiento v. Montclair State Univ., 513 F. Supp. 2d 72, 89 (D.N.J. 2007) (finding legitimate reasons for not selecting the more experienced candidate because it was up to the university to evaluate which qualifications best fit departmental needs).  That is, a plaintiff's disagreement with assessment criteria and belief that he is better qualified for the position is not sufficient to avoid summary judgment. Langley v. Merck & Co., 186 Fed. Appx. 258, 261 (3d Cir. 2006).

7

Here, Plaintiff has failed to establish a prima facie case of discrimination, as he has not shown that similarly situated employees outside of his protected class were treated more favorably than he was. Although Plaintiff has asserted that Ms. Hoak, a Caucasian female, was treated more favorably than he was, the record evidence establishes that Ms. Hoak was not similarly situated to Plaintiff in all relevant respects. Ms. Hoak was hired by the Postal Service as a casual (temporary) employee, serving a 90-day dual appointment as a Rural Carrier Associate ("RCA") and a Temporary Clerk. (Pascal Decl., Ex. 25; Ex. 4, Donahue Aff. at 13, ¶ 5.) Ms. Hoak was not a PTF Clerk; therefore, she did not perform the same job functions as Plaintiff. (Id., Ex. 4, Donahue Aff. at 14, ¶ 9; Ex. 2, Mercado Dep. 103:16-25.) For example, Plaintiff did not deliver mail or perform any other rural carrier functions, and Ms. Hoak did not perform any retail counter functions. (Id., Ex. 4, Donahue Aff. at 13-14, ¶ 6.) Because the positions entailed substantially different duties, Ms. Hoak's training differed from Plaintiff's training. (Id., Donahue Aff. at 14, ¶¶ 6-7.) Indeed, most of Ms. Hoak's training was provided on the job. (Id. at 14, ¶ 7.)

In addition, Ms. Hoak was not a probationary employee during Plaintiff's probationary period. (Id., Ex. 4, Donahue Aff. at 14, ¶ 9.) Ms. Hoak had successfully completed her probationary period for her dual appointment on May 31, 2006, before the Postal Service hired Plaintiff for the PTF Clerk position at the Atco Post Office. (Id., Ex. 26.) Her performance was rated as satisfactory in all areas on her 30-, 60-, 80-, and 90-day evaluations. (Id.) Ms. Hoak's second probationary period occurred after her career appointment on November 25, 2006, as a PTF Clerk. (Id., Exs. 25, 26.) Thus, Ms. Hoak's second probationary period occurred after Plaintiff was terminated. (See id.)

Even if Plaintiff had established a prima facie case of discrimination, the Postal Service has articulated legitimate, nondiscriminatory reasons for Plaintiff's termination. Plaintiff has not shown those reasons to be pretext for unlawful discrimination. The evidence in the record reveals that after Plaintiff's 30-day probationary evaluation, Plaintiff's conduct in the workplace towards his supervisor and coworkers was deemed unacceptable by his supervisors, as outlined below.

On August 14, 2006, Plaintiff argued with a senior mail processor who attempted to assist Plaintiff with a problem Plaintiff was having operating a mail sorting machine. (See Pascal Decl., Ex. 10, Mercado EEO Tr. 271:25 to 275:10; Ex. 3, Manzo Aff. at 2, ¶ 8; Ex. 4, Donahue Aff. at 2-3, ¶ 8.) Plaintiff instigated a loud argument based on his perception that the senior mail processor had sabotaged Plaintiff's machine. (Id., Ex. 10, Mercado EEO Tr. 272:6 to 273:22, 274:20 to 275:10; Ex. 16, Hall EEO Tr. 248:13-15.) The next day, Plaintiff confronted a co-worker about giving management a statement regarding the argument. (Id., Ex. 10, Mercado EEO Tr. 275:19 to 276:1, 328:7 to 329:2; Ex. 11, Dempster EEO Tr. 368:16 to 369:4, 371:5 to 371:25; Ex. 12.)

On August 14, 2006, Plaintiff wore inappropriate attire (untucked shirttails) at the retail counter. After being counseled, the next day Plaintiff repeated his behavior. (Id., Ex. 4, Donahue Aff. at 3, ¶ 8; Ex. 13, Donahue EEO Tr. 65:15 to 67:19.)

On August 29, 2006, Plaintiff acted inappropriately towards one of his coworkers, who notified management. (Id., Ex. 14 (Employee Statement); Ex. 11, Dempster EEO Tr. 376:5-11; Ex. 3, Manzo Aff. at 3, ¶ 8.) The same day, Plaintiff argued with management because he requested a schedule change which was denied when the Post Office was short-staffed. (Id., Ex. 3, Manzo Aff. at 3, ¶ 8; Ex. 4, Donahue Aff. at 3, ¶ 8.)

On September 2, 2006, Plaintiff argued with Supervisor Manzo about workload distribution and job assignments. (Id., Ex. 10, Mercado EEO Tr. 325:23 to 328:6; Hoak EEO Tr. 395:10 to 397:11; Ex. 16, Hall EEO Tr. 221:24 to 222:7, 222:16-22.)

In addition to these incidents, Defendant has provided credible evidence that Plaintiff's work performance during his probationary period was poor, causing interruptions to daily operations. (Id., Ex. 3, Manzo Aff. at 3-4, ¶ 8; Ex. 4, Donahue Aff. at 4, ¶ 10.) For instance, management noticed that Plaintiff was noticeably frustrated while operating the mail sorting machinery and that he sought constant assistance from co-workers. Also, Plaintiff had a lot of rejected mail, which had to be re-run. He pulled the mail down wrong, causing it to be mixed up and requiring it to be re-run. Further, Plaintiff's performance at the retail distribution window was poor compared to other trainees. His Employee Evaluation and Probationary Report stated: "Employee does not get along well with his co-workers. He's demonstrated he is argumentative and his work performance was unsatisfactory." (Id., Ex. 7.)

In opposition to the instant motion, Plaintiff has simply argued that the legitimate, non-discriminatory reasons given for Plaintiff's termination "have to be viewed in terms of credibility, consistency with other evidence, plausibility and other facts of record." (Pl. Br., p. 4.) Such an argument, of course, is insufficient to survive summary judgment, as it serves merely as a general denial.

Plaintiff has not produced any credible evidence to support his claim that the Defendant's assessment of his conduct was pretext for discrimination. Instead, Plaintiff seems to disagree with Defendant's perception of the confrontations he instigated. In fact, at his EEO hearing, Plaintiff testified as follows.

10

Q: Tell me something that the Postmaster said or did to you that indicated that he had a discriminatory motive based on your Hispanic background?
A: Not necessarily with the Postmaster.
Q: So the Postmaster never did or said anything to you that would be discriminatory based on you being Hispanic?
A: No.
Q: Tell me what anyone else said or did to you that was specifically geared for your Hispanic background.
A: Couple comments made by Mr. Manzo.
Q: What comments made by Mr. Manzo?
A: I don't want to say exactly -
Q: I'm asking you to say exactly what he said.
A: Well, I don't remember exactly what he said.
Q: Okay.
A: There were certain comments when I'd be working the P.O. Box and he would just briefly walk by and say something.
Q: Say what?
A: I don't recall exactly what he said. I can't say what he said if I don't recall what he said.
Q: If it was discriminatory – saying something discriminatory against you because of your being Hispanic, don't you think that would be something that you would find offensive?
A: Yes, but I would brush it off.
Q: And if you found it offensive, you don't think it would be something that you would report to your attorney or put it in your affidavit?
A: Well, at the time, I brushed it off. If I didn't even worry about somebody being ignorant towards me, how would I even remember to tell my attorney if this was months after?
Q: So can we agree that there is not a single reference in any of your statements of any single comment that you allege was made to you by Mr. Manzo?
A: Yes.
Q: That is true, correct?
A: (Witness indicated.)
Q: And you just told us that there was nothing about Mr. Donahue that was ever said or done that was discriminatory based on your being Hispanic?
A: No.

(Ex. 10, Mercado EEO Tr. 315:13 to 317:15.)

Plaintiff has not pointed to any record evidence that would tend either to dispute the facts demonstrated as reasons for Plaintiff's termination or to reflect discriminatory animus on the part of his supervisors. As such, summary judgment will be granted.

11

Conclusion

For these reasons and those placed on the record during oral argument,

IT IS ORDERED on this 3rd day of March, 2011 that Defendant's motion for summary judgment is hereby GRANTED.

                                        /s/ Joseph H. Rodriguez
                                        JOSEPH H. RODRIGUEZ
                                            U.S.D.J.